UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LILLIAN C. FRAZIER,

      Plaintiff,               Civil Action No. 16-11363
                                  Honorable Laurie J. Michelson
                                  Magistrate Judge Elizabeth A. Stafford

      v.

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

      Defendant.
_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 11, 14]

Plaintiff Lillian Frazier appeals a final decision of Defendant Commissioner of Social Security denying her application for disability insurance benefits under the Social Security Act. The parties filed cross motions for summary judgment, [ECF Nos. 11 and 14], which were referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, the Court **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 14] be **DENIED**;

- Frazier's motion [ECF No. 11] be **GRANTED**; and

- this matter be **REMANDED** for further proceedings pursuant to

sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Frazier's Background and Claimed Disabilities

Born September 23, 1963, Frazier was 50 years old when she submitted her applications for disability benefits on December 17, 2013. [ECF No. 7-3, Tr. 62].  She has past relevant work as a technical writer. [ECF No. 7-6, Tr. 162].  Frazier alleged that she is disabled due to "bipolar disorder, depression, anxiety, obesity, epilepsy," with an onset date of March 31, 2013.  [ECF No. 7-3, Tr. 62].  Her date last insured was December 31, 2016.  [*Id.*].

After a hearing on January 20, 2015, during which Frazier and a vocational expert ("VE") testified, the ALJ found that Frazier was not disabled.  [ECF No. 7-2, Tr. 39-61, 20-38].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-7].  Frazier timely filed for judicial review.  [ECF No. 1].

### B.    The ALJ's Application of the Disability Framework Analysis

Disability Insurance benefits are available for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Frazier was not disabled. At step one, she found that Frazier had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 7-2, Tr. 25]. At step two, she found that Frazier had the severe impairments of "attention deficit hyperactivity disorder (ADHD), bipolar disorder, and schizoaffective disorder." [*Id.*]. The ALJ concluded at step three that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 26-27].

Between the third and fourth steps, the ALJ found that Frazier had the RFC to perform "a full range of work at all exertional levels but with the following non-exertional limitation: she is limited to simple, routine, and repetitive tasks." [*Id.*, Tr. 28].

At step four, the ALJ found that Frazier could not perform any past relevant work. [*Id.*, Tr. 32-33]. With the assistance of VE testimony, the ALJ determined at step five that Frazier could perform work as a cleaner, packer, and assembler, and that those jobs existed in significant numbers in the economy, rendering a finding that she was not disabled. [*Id.*, Tr. 25].

4

## II.    ANALYSIS

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Frazier argues that the ALJ's RFC assessment is not supported by substantial evidence in that it does not take into account her limitations with regard to concentration, persistence or pace, and that the ALJ violated the treating physician rule by discounting the opinion of treating psychiatrist Kai Anderson, M.D.  [ECF No. 11, PageID 415-423].   The Court agrees that the ALJ violated the treating physician rule, and thus recommends that this matter be remanded for further consideration.

**A.**

Frazier claims that though the ALJ expressly found that she had moderate deficiencies in concentration, persistence, or pace (CPP), the ALJ failed to incorporate this limitation into the RFC.  [ECF No. 11, PageID 415-16; ECF No. 7-2, Tr. 27].  She reasons that the RFC's requirement of "simple, routine, and repetitive tasks" does not fully incorporate such moderate deficiencies, in light of her severe mental impairments.  There are inconsistent holdings among the reviewing courts on this issue, so ALJs have been urged to explain their reasoning in detail.  *Southworth v. Comm'r of Soc. Sec.*, No. 12–12243, 2013 WL 3388946, at *16 (E.D. Mich. July 8, 2013) (collecting cases).  In this case, the ALJ explained at the end of her step-three analysis that the limitations in the "paragraph B" criteria (including the moderate CPP finding) were not an RFC assessment, but are instead used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.  [ECF No. 7-2, Tr. 28].  She then noted that her RFC incorporated her assessment of Frazier's mental function.  [*Id.*].  In *Southworth*, the court found that the same language the ALJ used here meant that the ALJ believed her moderate CPP rating was fully accounted for by the limitations in her RFC assessment.  *Southworth*, 2013 WL 3388946, at *15–17.

6

Therefore, the Court's review narrows to whether substantial evidence supports the ALJ's finding that, despite her assessed moderate difficulties in CPP, Frazier could perform simple, routine and repetitive tasks on a sustained basis. *See id.* This question is intertwined with whether the ALJ erred in failing to give controlling weight to the opinion of treating psychiatrist Kai Anderson, M.D., in that, if the ALJ did not provide good reasons for giving little weight to Dr. Anderson's opinion, the assessed RFC is unsustainable.

**B.**

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at

723.  In all cases, a treating physician's opinion is entitled to great deference.  *Id.*

An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).  This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases."  *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted).  Courts will not hesitate to remand when the ALJ failed to articulate "good reasons" for not fully crediting the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

Dr. Anderson of Angel Counseling began treating Frazier after she requested an emergency appointment in October 2012, due to "work stressors."  At that time, she claimed that she was having difficulty coping at work, staying focused and was becoming more irritable.  [ECF No. 7-7, Tr. 266].

On March 29, 2013, just a few days before her alleged onset disability date, Frazier submitted a resignation letter, effective immediately,

to her employer, Quicken Loans.  Frazier testified that she resigned

because she believed she was at risk for losing her job due to her low

performance.  [ECF No. 7-2, Tr. 46].

After resigning from Quicken Loans, in her first doctor visit since her

alleged onset disability date, she returned to Dr. Anderson and reported

doing well.  She showed symptoms of depression, demonstrated by her

lack of attention to her daily hygiene and appearance.  However, she hadn't

suffered any maniac or psychotic episodes and her appearance was noted

to be neat and clean.  Her mood was euthymic, her affect was restricted

and her speech was coherent, logical and goal-directed.  She reported that

she was compliant with her medication and was not experiencing side

effects.  [ECF No. 7-7, Tr. 269].

In June 2013, Frazier met with Dr. Anderson and discussed her real

estate business that she recently opened.  Her overall mood was found to

be good and she was not experiencing any affective lability or excessive

anxiety.  She still needed to be encouraged to attend to her daily hygiene.

Again, she denied any side effects to her medications, which she was

taking regularly.  [ECF No. 7-7, Tr. 270].

By November 2013, Frazier's real estate business became stagnant

because of her struggle to focus and stay on task.  She believed she was

experiencing auditory hallucinations of music at night.  She reported

drowsiness from her morning dose of her Ativan prescription.  Her mood

appeared to be euthymic, her affect was mobile, her appearance was neat,

and her speech was coherent, logical and goal directed.  It was agreed that

the she would resume taking Adderall to improve her focus.  [ECF No. 7-7,

Tr. 270].

In January 2014, Frazier reported that the Adderall has not helped,

but about a month later her Adderall dosage was increased, which helped

her complete tasks but did not cure her trouble focusing.  [ECF No. 7-7, Tr.

327-28].

Consultative examiner, Nick Boneff, Ph.D., evaluated Frazier in

February 2014.  He observed that Frazier appeared neat and clean, and

her "speech was clear and she appeared to be of at least average

intelligence consistent with her level of education."  [*Id.*, Tr. 232].  Dr.

Boneff noted that she was "somewhat obsessive and perseverant, often

giving many more details than were requested or necessary to answer a

question adequately."  [*Id.*].  He found her affect to be constricted, her

mood serious and reserved, and her stream of mental activity slow, but

spontaneous and logical.  [*Id.*].  Dr. Boneff determined that Frazier's

"history of symptoms are consistent with a personality disorder with

dependent borderline feature and adult attention deficit disorder which is generally managed with medication." [*Id.*, Tr. 234]. He further opined that Frazier did not exhibit symptoms of major depression, disturbance of thought, impaired memory or concentration despite her anxiety, and that she is able to follow two and three step directions and should be able to appropriately interact in a structured work environment. [*Id.*]. Dr. Boneff noted Frazier could dress and shower herself, take her medication, and drive. He diagnosed Frazier with ADHD, manageable with medication; bipolar disorder; and personality disorder with borderline dependent features. [*Id.*].

Dr. Anderson reported in March 2014 that Frazier was "at baseline." She claimed to be compliant with her medications and denied any adverse side effects from them. [*Id.*, Tr. 329]. The record reflects that Frazier also began group therapy with therapist, Deena Guice, MA, LLP at Eastwood Clinics in March 2014, up until January 2015. [*Id.*, Tr. 312-24, 292-311].

In April 2014, Daniel C. Stettner, Ph.D., performed a psychological evaluation of Frazier. [ECF No. 7-7, Tr. 208-82]. Dr. Stettner observed Frazier's mood to be alert, cooperative, and mildly distracted, and her affect was "somewhat bland and distant." [*Id.*, Tr. 281]. He also found her to maintain good eye contact; have a slightly halting speech pattern; respond

11

to questions in a laborious, somewhat disjointed and over-inclusive in detail manner; suffer from thought blocking and subtle cognitive confusions; exhibit a "child-like" quality; and have a current functional cognitive levels significantly below average general level.  [*Id.*].  Dr. Stettner assessed Frazier with a GAF of 45 and as severely impaired in her personal, social, vocational and family capabilities, with significant deficits in concentration, attention and cognitive distortions.  [*Id.*, Tr. 282].  He did "not see [Frazier] being a candidate for vocational assessment and/or counseling for potential employment of any kind."  [*Id.*].

In March 2015, Dr. Anderson wrote a letter stating that Frazier had been diagnosed with Bipolar II Disorder and ADHD, with symptoms including affective lability, intermittent auditory hallucinations, disturbed sleep cycle, apathy, anhedonia, difficulty attending to her daily hygiene, difficulty completing household chores, impairment in attention span and concentration, lethargy, distractibility and difficulty completing tasks.  [ECF No. 7-7, Tr. 325-26].  Dr. Anderson noted that Frazier's treatment included individual psychotherapy and medication management, and opined that she was unable to maintain employment "due to exacerbations of her illness and her difficulty completing tasks" because of her ADHD.  [*Id.*].  Dr.

Anderson concluded that Frazier's prognosis to be able to maintain employment was poor. [*Id.*, Tr. 326].

## C.

The ALJ gave little weight to Dr. Anderson's 2015 opinion, finding that Dr. Anderson's progress notes did not support her opinion. [ECF No. 7-2, Tr. 31]. The ALJ pointed out that Dr. Anderson's notes reflected that Frazier's impairment improved between November 2012 and June 2013, with her being in a much better mood in December 2012, doing fairly well in April 2013 and then being in a good mood in June 2013, without affective lability, excessive anxiety or severe depression. [*Id.*]. The ALJ also stated that the opinion was given in March 2015, but that the record reflected that Dr. Anderson had not treated Frazier since November 2013. Lastly, the ALJ noted that the determination of disability is ultimately reserved to the Commissioner.

The ALJ gave great weight to Dr. Boneff's opinion, finding it to be consistent with the record. [ECF No. 7-2, Tr. 30]. She further gave great weight to the opinion of state agency psychological consultant, Kathy A. Morrow, Ph.D., given in February 2014. Dr. Morrow opined that Frazier was able to "perform tasks that require intact focus, concentration, and persistence"; retained "the mental capacity to sustain an independent

routine of simple work activity"; could "tolerate low stress social demands and adapt to simple changes in routine"; and "may be limited in meeting more complex and detailed work demands." [ECF No. 7-3, Tr. 70; ECF No. 7-2, Tr. 31]. The ALJ determined that Dr. Morrow's opinion was consistent with the record, including with Dr. Boneff's findings and Dr. Anderson's progress reports, but rejected Dr. Morrow's finding that Frazier required low stress social demands. [ECF No. 7-2, Tr. 31-32; ECF No. 7-7, Tr. 231-34].

The overwhelming flaw in the ALJ's reasoning for the weight given to the medical opinions is that, as the Commissioner concedes, the ALJ's statement that the record indicates that Dr. Anderson last treated Frazier in November 2013 is wrong. [ECF No. 14, PageID 449]. The record shows that Dr. Anderson continued to evaluate Frazier multiple times between November 2013 and January 2015. [ECF No. 7-7, Tr. 327-335]. Still, the Commissioner argues that even if the progress reports through January 2015 were considered it would not undermine the ALJ's analysis. The Commissioner's argument is essentially that that error was harmless. But violations of the treating physician rule are usually not harmless.

"The treating physician rule occupies a special place in social security cases." *Rabbers*, 582 F.3d at 656. This is because "treating physicians are 'likely to be the medical professionals most able to provide a detailed,

longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). So even if substantial evidence might support the ALJ's decision, a violation of the "good reasons" rule is harmless only if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir.2010) (quoting *Wilson v. Comm'r of Social Security*, 378 F.3d 541, 547 (6th Cir. 2004) (internal quotation marks omitted). *See also Cole*, 661 F.3d at 940 (same).

Here, it is clear that the ALJ did not adopt Dr. Anderson's opinion. And the Commissioner has not met the goal of Section 1527(d)(2) because she did not address whether or not the treatment notes after November 2013 supported Dr. Anderson's opinion. The Commissioner provides her own analysis of the Dr. Anderson's post-November 2013 treatment records, [ECF No. 14, Tr. 451-52], but the Sixth Circuit has emphasized that "[i]n

15

reviewing an ALJ's findings and conclusions, this Court shall not accept appellate counsel's *post hoc* rationalization for agency action in lieu of accurate reasons and findings enunciated by the Board." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (internal quotation marks, brackets, and citation omitted). And even if this Court considered the Commissioner's analysis, it would still find that Dr. Anderson's opinion was not so patently deficient that it could not be accepted.

The Commissioner points out that, in January 2014, Dr. Anderson reported that Frazier claimed that the Adderall was helping and that she was completing more tasks. But Dr. Anderson also noted, and the Commissioner omits, that Frazier was still having difficulty focusing. [ECF No. 7-7, Tr. 328]. Other records showed continuing, if uneven, difficulties. In May 2014, Dr. Anderson indicated that Frazier was having difficulty completing tasks and expressed overall concerns about her mood and apathy. [*Id.*, Tr. 330]. The following month, Frazier was still having problems focusing and was struggling with depressive symptoms. [*Id.*, Tr. 331]. In September 2014, Dr. Anderson noted that the Frazier was "at baseline," but also indicted that she continued to report having difficulty with completing tasks. [*Id.*, Tr. 332]. Again in November 2014, she was

still having difficulty with completing tasks despite being less despondent and her mood being stable. [*Id.*, Tr. 334]. In January 2015, Frazier's mood had stabilized and she felt the Concerta was helping her to focus. [*Id.*, Tr. 335].

The Court agrees with Frazier's argument that the ALJ's error in affording Dr. Anderson little weight was compounded by her giving greater weight to one-time-examiner Dr. Boneff and state agency consultant Dr. Morrow. [ECF No. 11, PageID 422]. The treating physician rule is predicated on the detailed, longitudinal picture and unique perspective that treating sources provide:

> 'Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'

*Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). Given the variability of Frazier's functionality, giving greater weight to a state agency consultant and a one-time examiner rather than to Dr. Anderson's longitudinal and unique perspective was patent error. This is especially true because the disability alleged is a mental illness, and Dr. Anderson's diagnoses and observations

constitute the type of data relied upon in such cases. *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir.1989) ("The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.").

Moreover, the ALJ's reasoning that Dr. Boneff's and Dr. Morrow's opinions were consistent with the record is undermined by the fact that the ALJ did not consider the entire record; the ALJ did not consider whether those opinions were consistent with Dr. Anderson's records after November 2013.

The ALJ was right in stating that a determination of disability is an issue ultimately reserved to the Commissioner. *Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir.2008). But the ALJ was required to give controlling weight to Dr. Anderson's opinion regarding the nature and severity of Frazier's mental illnesses. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. Dr. Anderson's opinion specified the nature and severity of Frazier's mental illnesses. [ECF No. 7-7, Tr. 325-26]. The ALJ gave little weight to Dr. Anderson's assessment of the nature and severity of Frazier's impairment, and thus did not factor that opinion into the assessment of Frazier's RFC.

For all of these reasons, this matter should be remanded for reconsideration of the weight given Dr. Anderson's opinion, taking into consideration the longitudinal relationship demonstrated here and the treatment records after November 2013.

### D.

On a final note, Frazier's challenges to the weight given to Dr. Stettner and Ms. Guice are without merit. The ALJ sufficiently explained her reasons for affording little weight to Dr. Stettner, noting that the opinion was inconsistent with Frazier's activities of daily living, and that Dr. Stettner considered some inaccurate information, including that Frazier had not worked outside the home since September 2012. [ECF No. 7-2, Tr. 30-31]. The Court does question the ALJ's reasoning that Dr. Stettner had not established a treating relationship with Frazier when he rendered his opinion, which is notably inconsistent with the ALJ's decision to give great weight to the opinions of a state agency consultant and one-time examiner.

Frazier admits that Ms. Guice is not considered to be an "acceptable medical source," but argues that her findings still should have been considered by the Court. SSR 06-03p, 2006 WL 2329939, at *2. The ALJ did in fact acknowledge that Ms. Guice treated Frazier from March 2014 through January 2015. [ECF No. 7-2, Tr. 30]. The ALJ's failure to

reference specific findings in Ms. Guice's treatment notes is not error. *See Kornecky v. Comm'r of Soc. Soc.*, 167 F. App'x 496, 508 (6th Cir. 2006).

Thus, the ALJ did not err in failing to accord significant or controlling weight to the opinions of Dr. Stettner and Ms. Guice.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Frazier's motion [ECF No. 11] be **GRANTED**; that the Commissioner's motion [ECF No. 14] be **DENIED**; and that this matter be REMANDED for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: June 26, 2017

**<u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation. *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection

must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains. Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation. If the Court determines that any objections are without merit, it

may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served
upon counsel of record and any unrepresented parties via the Court's ECF
System to their respective email or First Class U.S. mail addresses
disclosed on the Notice of Electronic Filing on June 26, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
